We finished that case. It's a little bit like deja vu. Okay, well, welcome back. This is a new case, United States v. Azam, but our counsel are the same, so you may proceed when you're ready. Thank you, Your Honor. Kara Hartzler, may it please the Court. Kara Hartzler, Federal Defenders, on behalf of Mr. Azam. I'd like to shift and take a slight break from Miranda before we get back into it and talk about our first issue, which was whether the charging document in this case was adequate. And in this case, all the Court needs to look at to resolve this are the government's admissions and their brief. First of all, the government admits that the intent to enter without getting caught is an element of illegal entry, and the government then also admits that this element didn't appear anywhere in the charging document. And under this Court's decision in quasi-QAZI, basically that's all the Court needs to know. This requires remand and dismissal of the complaint. And I take it if you're correct, the government could then institute new charges against your client. I don't want to concede that because the statute of five years have run. I know you don't want to concede it, but it seems to me that that's the natural outcome of that argument. I think that is probably likely. So that alone resolves this case. If the Court agrees with us, it doesn't even need to reach the Miranda issue here. However, I'll go ahead and hit that Miranda issue. As the Court has been struggling with all morning, you know, where do you draw the line? I think here at a minimum there was the same facts as we've had in prior cases today where a person was seen basically either right next to the border or right after they had crossed. It was in the middle of the day. The person and the group was then transported to a different location. And very importantly for this case, and a fact that the government never really acknowledges in their brief or grapples with, the fact is that they confiscated everyone's cell phones and shoelaces. That's not something that you do if a person is not in custody. You take a person's shoelaces because you don't want them to have shoelaces when they're in jail and there might be a suicide issue. You take them because you don't want them to be able to run, and it's hard to run if your shoes fall off. Perhaps. I'm not sure there's anything in the record either way. I guess my bigger picture point, Your Honor, is that this is a situation where property was confiscated. And it's hard to imagine a situation where there would be a Terry stop and a person would be put in a car, moved to another location, have their property confiscated, and then that would not be custody. So at a minimum, that resolves this case. I want to then move to the… Before you leave that point, we've been asking in the last two cases whether there was, well, the last case, whether there was some good reason to move the people from point A to point B. You're not contesting here that there was a good reason to move the people from point A to point B. The officer here did testify that he was moved away from the border because of a safety risk. We agree. We acknowledge that. But let's say… You still think that they were in custody, but you're not claiming they were in custody because the officer didn't have a good reason to move them. I agree that there was a flight or a safety risk that was presented. I just want to make sure that I… Right. But I think at a minimum here, once they got to the second location, they could have just given the Miranda warnings then before they started reading off a form, questioning them, and taking their property. Each of these cases, what makes them frustrating is they could have given the Miranda warnings, whether they were required or not, at the time of apprehension. It's not whether they could have given the warnings. It's whether they were in custody. And I understand your argument that they were in custody, but you're not relying on the movement to put them in custody. You're relying on the other factors you talked about. I'm not. I think the other factors are enough to resolve this case. So I want to talk about harmlessness of the Miranda issue in case this becomes necessary. I don't think it is necessary, but essentially what I want to point the court to for harmlessness is the magistrate judge's analysis on pages 118 to 120 of the excerpts of record. And there's a couple of really critical things that the judge says that shows that the judge actually relied on the statements in this case. What the judge does is the judge says, okay, well, I'm looking at all this circumstantial evidence of how they entered. I don't think there's any Ninth Circuit case that says that that alone is enough to show alienage. Because of that, I'm going to turn to the statement, yes, Punjab. Okay, so let's assume for a moment that the judge shouldn't have turned to the statement. Okay. But we review the record on sufficiency of the evidence de novo. So the question I have is, absence of statement, is there sufficient evidence to support the conviction? Find alienage? No. Okay, so I want to ask you, I think that would be your position, and I want to ask you, I want to address the implications of that position. It's the same question Judge Parker and I asked in the last case. You have circumstances of somebody coming across. Let's assume those circumstances would establish the other elements of the offense, that somebody came across at a non-port of entry. Sure. And the person refuses to answer any questions. The government may not charge him for violating this statute on that evidence? No, they could absolutely charge him. They just need other evidence of alienage. They could get a birth certificate. Why isn't that circumstantial evidence of alienage? So the circumstances of his apprehension and the absence of any documents giving him the right to be there, why isn't that sufficient evidence? Well, first of all, this Court has never held that that's enough. And, in fact, this Court has held that mode of entry, it may not even be enough to corroborate the person's admissions. Well, actually, the Court has said it depends on the facts. The Court said mode of entry may be enough to corroborate, and in this case we have more than mode of entry. We have not just mode of entry, but we have covered in, you know, wearing a life jacket, covered in water, obviously had been in water, and the only water in the area is the canal, and the canal goes across the border, and he's apprehended with four Spanish-speaking people. We don't know whether they're – we know they're not citizens, but the judge didn't put that in the record. And then we have the check of the database. You know, not overwhelming evidence, but some evidence. So let's assume your client had never said a word. Would there be sufficient evidence to convict him in this case? No. So what you're really saying is that in order to get a conviction in the real world of somebody from Asia where you can't call up the next day and say, is this guy a citizen, it's okay for the alien – the alien can avoid conviction on this crime simply by keeping his mouth shut. No, not at all. Because what happened here is that the government just didn't do its work. It didn't look – for instance, in other cases, there have been visa applications. They've gotten a birth certificate. They've used other documents. And they could have had the witnesses testify. So could they have held your client while they looked for all these things?  Yeah, they could have arrested him. Then there was probable cause to arrest him in your case. There was probable cause, but there wasn't sufficient evidence beyond a reasonable doubt of alienage. So I want to play this out because I'm worried in this case about the effect on border enforcement. They stop him. They have probable cause to arrest him. And put aside the Miranda issue for a moment. Let's just assume he's a smart guy or has been advised, and he says, not saying a word. If they can't find evidence of his alienage within the period of time in which he's entitled to a speedy trial, which is, what, 90 days? No, 70.   Okay. I'm sorry. No, it's fine. A relatively brief period. You call the Pakistani embassy and they say, because he's a terrorist and we sent him to blow up the country, we're not helping you. I'm just not sure why I can't infer. I mean, a reasonable person looking at all these facts, even absent the statement, would say, well, surely this guy's an alien. U.S. citizens cross between ports of entry all the time. It happens all the time for a variety of reasons. Doesn't this hypothetical actually just, I mean, I know we're moving away from the Miranda issue, but I think that this kind of relates in the sense that had they just arrested him, which they had probable cause to arrest him, then they could spend as much time as they needed to determine what the evidence was to be able to convict him beyond a reasonable doubt. Exactly. And if I understand your argument, you think all of these other things that they had just didn't rise to the standard that the government has of the sufficient evidence beyond a reasonable doubt. Exactly. And in fact, there are many, many cases, 1325s, 1326s, where the government brings a lot of other evidence. And the fact is that in this case, the prosecutor just didn't bring anything. So let me ask you the next question, because we've asked you to assume your client said nothing. And let me ask you to assume for purposes of this question that there's not a Miranda problem. And so the additional fact that comes into the record is Punjabi. Is that enough to sustain the conviction? We are arguing no. And the reason is because Punjabi is not necessarily, it can be a region, but it can also be a language, and language is not necessarily indicative. So can Russian. Correct. But it's at least another fact. It can be a region. It's one of the two dictionary definitions. One is region, the other is language. But you could also, you could be a Punjabi and be an American citizen. Exactly. So you don't think putting the two, even putting that in, putting aside the Miranda problem, would allow a reasonable finder of fact to find that this person was not an American citizen? I think it's very problematic to rely on language and conflate it with alienation. Well, you said on language, but I'm saying I can look at that and say, gee, Punjabi to me in this context says I'm from the Punjab. I'm a Punjabi. It may be, there may be some sufficiency issues. But I'm interested because if you don't win your Miranda other arguments, then we have to confront this. That is correct. And so in your position is that it's not enough. And here we are saying no, it's not enough. Okay. I'll save the remainder of my time if the court has no other questions. Good morning again. Zach Howe for the United States. I'm happy to start with the sufficiency argument that we've just been discussing. I'll start with the complaint argument. Sure. So I think it's important here to break out the mens rea and the actus reas. The mens rea is specific intent. The actus reas is entry, which obviously includes entry free from official restraint. So I think the question here is did the complaint have one and did it have the other? Now, starting with specific intent, Resendez-Ponce from the Supreme Court says that alleging attempt includes alleging its component parts. So the complaint here alleged attempt, therefore it included the component part of specific intent. Now, my friend on the other side says that Resendez-Ponce only addressed the actus reas and not the mens rea part of attempt. I don't think there's any way to read the reasoning of Resendez-Ponce as doing so when it specifically says you don't need to allege the component parts of attempt. And then you have cases from this court like DeVore and Elk Booth, which has specifically applied Resendez-Ponce to the mens rea allegations in complaints and held that they were sufficient even though they lacked the specific intent language. So I think you can apply Resendez-Ponce in this court's cases to address the mens rea piece. Now, on the actus reas, that is the entry free from official restraint, here the complaint alleged entry, it didn't define that term to include freedom from official restraint. But, of course, as this court said in the unpublished Lopez case, complaints don't need to define the term entry. And that is all consistent with Supreme Court case law saying you don't need to define legal terms of art in indictments or informations. The best case I can point you to on this issue is Hamling. There the court said it was sufficient to allege that the defendant mailed obscene materials. And obscenity is a legal term of art that is much more confusing than entry or attempt. It's a three-part definition. I will bungle it very badly if I try to recite it for you, but it involves considering the prurient interests and community standards and whether information has scientific or literary value. There's much more to it than that. But suffice it to say the court said you don't need to allege all of that in the complaint because you don't have to define legal terms of art. That's all you have to do. Is there any requirement when we look at the complaint? I mean, the facts of this case are – I mean, there is no contention of official restraint. And the case was tried on a different theory and everybody was on notice of this stuff. Do you contend that if there was a deviation in the indictment, it's not material? So, Your Honor, this court, I believe, has case law that may well have been superseded by later Supreme Court case law, but we haven't made that argument here. But you have case law. I'm not making that because that was one of the things that occurred to me is that – and I don't think your friend argues to the contrary. She's not arguing that her client was prejudiced by any deficiency in the indictment. And I think the court has started to suggest that we ought to look at stuff that way. And I think that may well be right. We haven't advanced the argument here. So for purposes of this appeal – You're not making it. I'm not going to make it for you. Can you return to the sufficiency of the evidence issue that I think you were going to start with? And my question specifically is, how can a rational trier of fact find that his alienage beyond a reasonable doubt with the lack of a – I mean, I guess it's just Punjabi. That's what we're looking at. So if we agree with the government that there was no Miranda problem and that statement or that word comes in, explain to me what your best case is and why you think that thin evidence is enough.  So I'll caveat and say, you know, you're obviously looking at the evidence in the light most favorable to the government, drawing all reasonable inferences in our favor. Now, the reason you can find Punjabi sufficient is because you look at it in conjunction with the mode of entry, the database searches, the – What's your best case? I'll be honest. I don't think there's a case perfectly on point here. The best case that the parties were able to come up with in response to a request for briefing by the magistrate judge was the Garcia Villegas case. Now, there you actually – it was a corpus delicti case, and there you actually had an admission of alienage, and the court says that mode of entry alone is enough to corroborate it. The reason that's – Yeah, but there we're dealing with something different because everybody agrees that if – that the confession in that case, if admitted, is sufficient to establish the fact of the crime. And so what we're trying to do is – sufficient to establish the element of alienage, I'm sorry. So we're trying to figure out whether there's sufficient corroboration of the confession in order to let us use it. They're not making that argument here. They're not making a corpus delicti argument. They're saying if admitted, it's just that fact and add it together with all the other facts in the case isn't sufficient. And I'm trying to – so that's really the question we're both asking. Yeah, wouldn't we be lowering the bar significantly if we were to find that in this case, that alone would give a trier of fact enough evidence to find beyond a reasonable doubt? I mean, that's pretty – it's pretty different, I think. And I appreciate, you know, your statement that there really isn't another case on point. I can't find one either. Sure, so let me try to address all of that. And I do agree it's not on point. There's a slight tangent. I do think sufficiency of the evidence – or corpus delicti might be a subset of sufficiency of the evidence, which is why this court has an intracircuit split on the proper standard of review. No, see, I'm assuming that the rest of the facts here are sufficient to corroborate the – sufficient to corroborate his statement, Punjabi. I just don't know whether that statement, even if corroborated, is enough to – is enough to establish the alienage elements of this – element of this offense. Understood. And what I will say is I think this will often be the answer when you're talking about sufficiency of the evidence. We're often going to have to come up here and say there's not a case directly on point because sufficiency of the evidence is, by nature, so fact-bound. What I can say is that when you take the answer Punjabi, which I agree refers to a language or ethnicity and not a region. I think Punjab would be the region. So when you have an answer to an ethnicity or a language, I do think that is enough when you take the rest of the facts of this case. And I'm happy to walk through what those are. I think you have the database searches, which I'm not placing too much weight on, and neither did the magistrate judge, but it is something that the defendant had no petitions or any other indication that he had applied for or received status within the United States. Beyond just the answer Punjabi, the testimony was that the defendant had trouble understanding Spanish or English, whereas the four people he was traveling with did understand Spanish. And obviously when – There are people in this country who don't understand Spanish or English. I totally agree. I do think it's some evidence, but the reason I think it's more than just a lack of understanding of Spanish or English is that he is traveling with individuals that, inferably, he does not understand. And obviously it is somewhat unusual to find a United States citizen swimming through a culvert right near the border, traveling with individuals that he doesn't understand. The reasonable inference for that is that those are not citizens. They are noncitizens who came into the country over the border. So is it your position that – let's assume he didn't respond. Do you think you could sustain a conviction without that response? Yes, and that is our harmless error argument for Miranda. I admit that's a higher hill for us to climb because we don't have the benefit of the – Yeah, I mean, I'm not worried about – I'm not worried it's a Miranda violation for the moment. Sure. We may or may not find one. That's not my question. My question is assuming that there – we're not looking at harmless error. We're just trying to figure out whether or not the addition of the Punjabi or subtraction of it in this case makes any difference. So is it your position that you could sustain a conviction for violation of this statute simply on all the other evidence in the case? I'm not going to try to characterize it, whether it's motive entry argument or who he's with or whatever. Could you sustain a conviction based solely on that? On these facts, yes. Tell me why. So I think the testimony about Azzam not understanding English or Spanish directives and having – the agent having to use gestures, as compared to the four individuals who are with him who did understand, gets you 90 percent of the way to the statement Punjabi anyway because it indicates – again, I'm not just saying that it's the – So you can infer from that that he doesn't speak Spanish or English? You can infer from it he doesn't speak Spanish or English, but again, I'm not just relying on that. It's the fact that he doesn't speak Spanish or English, whereas the individuals he's traveling with do speak that language, and you can infer that therefore he is traveling with individuals, swimming through a canal right next to the border with individuals that he can't even communicate with. That's not something that, using your reasoning and common sense, Well, I'm trying – and so let me back – I'm trying to subtract pieces from this case and figure out whether additions are important or not. But let's assume that he's perfectly quiet when he gets there. He just doesn't respond to any question. He doesn't indicate that I don't understand anything or not. So all you've got are the other circumstances of the case. Let me just tell you that common sense would tell me nobody gets in a canal and floats under the fence and does all the things that happen here unless he's trying to enter a country other than this country of citizenship. But common sense is not what we apply to these cases. We're trying to figure out what the legal standard requires. By the way, the officers did not know that he was in a canal or floating under a fence. They saw him on land. He was wet. I suppose you could infer that. Hiding in a culvert. The judge decides, right, but I'm assuming that it's a reasonable inference that he was in the canal because it's the only other water in the area. He's got on a life preserver. So let's assume whatever the facts are, you take all of them into light and what's favorable to the government, but you're not relying on his failure to acknowledge that he speaks English or Spanish. Is that enough? Yes, and I do agree with all that. They didn't see him. It was an inference based on him being wet. So the reason I say it's enough. If it's enough, then what happens in this case? Would the government retry him without that statement if it believed it could prove its case? So the charging decision would be above my pay grade here, but I'm going to hazard a guess that we probably would not retry him. The reason I ask the question is if we sustain your friend's argument, which is that the proof in this case was insufficient, then you can't retry him. That would be he was subjected to jeopardy. If we find an error, an evidentiary error, we could send it back for retrial. Yes, I agree completely. So what concerns me about minimalizing your position and eventually get to it is we have two crimes possible here. One is just I don't care what country you're from, you can't hop over the fence. You've got to come through a port of entry unless there's a reasonable excuse. And the second crime is it's a worse crime if you do that and you're an alien. So would the government really be prevented from prosecuting these, which is sort of one of your arguments in the brief? You could always prosecute the guy for the illegal entry crime. You just couldn't prosecute him for being an alien illegally entering, right? I agree with all of that. The facts here are certainly sufficient to know, but they don't even argue that the facts here aren't sufficient to establish the other elements of the offense that he entered the country through other than a port of entry. We can surely infer that from all the facts here. So the question is really why shouldn't we require more of the government if they want us to charge the more serious crime? So I think I agree with everything you're saying. Now, the only part I maybe disagree with is the very last part. I think this is a simple question on this unique constellation of facts. Is the evidence sufficient? And I'm not saying that other evidence… I'm responding to one of the arguments in your brief, which is that otherwise how will we prosecute people? Pakistan may not return our phone calls. And the answer is I think you prosecute them for the entry crime and not the alien entry crime. So I can't speak to that. I am aware of the 1459 crime. I'm not aware of a single time where we've charged it in our district. Maybe it does happen. So I can't speak to any of that. The only thing I can speak to is, again, whether the evidence was sufficient in this case. And I'm happy to speak more about that or about the Miranda issues. I believe I have about a minute left. So what I can say is that I think this would be a different case if you had different circumstances of entry, if you had different responses to, again, not the questions, but just the gestures or the good afternoon or the other things that don't involve the defendant's statement, if you'd have differences in the database searches, if you'd have differences in the people that Azzam was with and whether he could understand them or not. So, again, I want to be very clear that I think there would be many circumstances where on somewhat different evidence the evidence wouldn't be sufficient. I'm simply relying here on that additional evidence that you had beyond just the statement of Punjabi or beyond just even the communications with the agent writ large. I have to ask you this question because it fascinates me. Your agent says, the agent says, I don't speak any of these other languages. There's nothing in the record indicating why he said to him Punjabi, is there? I don't recall if he... He says, the agent says Punjabi and the other guy says Punjabi.  And was he a Sikh? I don't know the answer to that. There's no evidence in this record suggesting why the agent thought of saying the word Punjabi, is there? You know, I believe, and I might get the record citation wrong here, it's in the 40s somewhere, but I believe the agent may have misunderstood and thought that Punjabi referred to the region. Well, no, I'm not worried about... He may have reasonably inferred that it referred to the region. That's one of the definitions in Merriam-Webster. I'm just... I'm asking a question that... Really, does the record tell me why the agent thought to say to Mr. Azam, Punjabi? No, I... As opposed to... As opposed to Russia or some other language. As opposed to, you know, Malaysian, you know, whatever. No, I'm just inferring... There isn't, there isn't. I'm just... No, there's nothing like that. I was hoping you could help tell me I was wrong and the record told me why, but you can't. No, I'd be hazarding the guess that aside from English and Spanish... We're all hazarding guesses. ...that would be one of the next most common languages. But again, that's not in the record. That's sort of me speculating. So there's nothing on that particular question. Thank you. Happy to answer other questions or else I'll submit. Thank you. Thank you. I'd like to try to answer your question, Judge Hurwitz, about why couldn't they just charge the 1459? And they can. In fact, in the Western District of Texas, that is a regularly charged crime that the DOJ can and does get convictions for. So I think for that reason, there is absolutely a good reason not to take the government up on its offer to lower the evidentiary burden that it has. And I know that the court is aware of this, but this is not about whether we can deport people. This is about whether we take their liberty for a criminal offense. And we shouldn't be relaxing the burden just because the government believes that it should be relaxed. Just to go back for my last point to the argument about the sufficiency of the complaint, I think the government's argument, it made a point at one point that the term enter doesn't need any further clarification. And this court's decision in Vasquez-Hernandez, which is on page 7 of our reply brief, says the exact opposite. It says for purposes of the crime of illegal entry, and in that case it was a re-entry but the same elements, the doctrine of official restraint gives the word enter a distinct legal meaning that evades a general reading. And because of that, it is improbable that an average juror could correctly understand and apply the term entry in this context. That alone shows that there needed to be further clarification in the complaint. All the government had to do was add three words. It just needed to say attempted to enter without being apprehended. They didn't do that. We put them on notice. They chose not to. That's all this court needs to know to resolve that issue. What about Resendez-Ponce? Resendez-Ponce, the issue of official restraint was never raised, anywhere in the briefing, anywhere in the discussion. So while Resendez-Ponce basically did say it established the level of mens rea, i.e. specific intent. It said the word attempt sufficiently encompasses a specific intent mens rea of attempted illegal entry. But it never said what that specific intent applies to. And the argument about does it apply to entering without getting caught was never at issue there. And so it wasn't resolved. And this Court's case law clearly holds that it is an element, and because it's an element and because it's charged, as the government admits, nowhere that resolves. So I take it there would be no dispute if this were not an attempt case. Correct. Because that's what our case law says.  And why doesn't the attempt, why doesn't under the Supreme Court's jurisprudence, the attempt allegation solve the problem? Because it would be, for instance, the same as. . . I mean, it might be a silly rule, but isn't that what the Supreme Court's telling us? Let's take the example of burglary. Let's say that you charge someone with attempted burglary. Now the elements of that would be a specific intent to enter in order to commit larceny or any felony. But let's say that the charging document only said attempted to enter and had nothing as to commit larceny or any felony. That would not be a sufficient complaint, and that's exactly what we have here. But if it said attempted burglary, would that be okay? No, because the complaint has to define the elements of burglary. Even if it says attempted? Even if it says attempted, you still have to say what does that. . . Yes, attempt says specific intent, but what does that specific intent apply to? And here the element that it's supposed to apply to, entering with the intent to go at large and not be caught, that was nowhere. What does that do to the Supreme Court's jurisprudence? Even though the court says alleging attempt covers some sins, what you're saying is it really doesn't. No, I'm saying that there's plenty of cases where courts have said that questions that lurk in the record that were never decided are not decided. And the official restraint question and whether specific intent must apply to an intent to enter without being caught, that was never decided or even discussed or raised in Rescindes Ponce. And I'm out of time. Thank you very much. Thank you, Your Honor. Thank you both for spending so much of your valuable time with us. Thank you, Your Honor. We appreciate the spirited questions.
judges: Parker, HURWITZ, DESAI